**UNITED STATES of America, Plaintiff,**

v.

**CITY OF COLUMBIA, MISSOURI, and Harold Boldt, Defendants.**

No. 86–4003–CV–C–9.

United States District Court, W.D. Missouri, C.D.

March 23, 1989.

Linda L. Parker, Asst. U.S. Atty., Kansas City, Mo., Henry S. Friedman, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Robert H. Freilich, Richard G. Carlisle, Stephen J. Moore, Kansas City, Mo., for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

The United States claims that the payments in lieu of gross receipts tax ("PILOT") portions of utility bills submitted by the City of Columbia, Missouri, ("Colum-

bia") to Harry S. Truman Memorial Veterans Hospital ("hospital") is a tax and, therefore, prohibited by the United States Constitution. Besides declaratory and injunctive relief, plaintiff seeks to recover a money judgment from defendants for monies paid to the City attributable to the PILOT assessment.

Presently before me is plaintiff's motion for summary judgment.

### I. *Standard for Summary Judgment*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

██ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will

bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

■ The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* 106 S.Ct. at 2512.

## II. *Undisputed Facts*

The Veterans Administration is an independent agency of the United States government which was created by Congress to administer the laws relating to benefits for veterans, their dependents and their beneficiaries. 38 U.S.C. § 201, *et seq.* The Harry S. Truman Memorial Hospital is located in Columbia, Missouri, and is administered by the V.A. Columbia provides water and electricity and water and electrical services (utility services) from Columbia's wholly owned utility plants to the Veterans' Hospital.

City Ordinance Sections 15.570 [1] and 15.-645 [2] provide that the monthly electric and water charges shall include an "in lieu of gross receipts tax payment" (PILOT) equal to a specified percentage of the monthly utility rate charge. City Ordinance Sections 15.570 and 15.645 were enacted pursuant to City Charter Section 102. Section 102 provides that the City Council should establish rates, fees or charges for utility services furnished by the City's public works department to produce revenues sufficient to pay the cost of operation and maintenance of the public works, to pay the principal and interest on all revenue bonds of the City, to maintain an adequate depreciation fund for the making of renewals and replacements, to provide a fund for the extension, improvement or enlargement of the public works, to pay the interest and principal of any general obligation bond issued by the City to extend or improve the public works and "to pay into the general

---

**1.** On October 7, 1985, the Columbia Code of Ordinances was recodified with Section 15.570 renumbered Section 27.116 and Section 15.645 renumbered Section 27–128. Although Sections 15.570 and 15.645 have been revised, the revisions are not material to the issues involved in this case.

Section 15.570 states: "In addition to the charge based on monthly rates as computed above, the total monthly charge for service shall include applicable sales taxes and an in lieu of gross receipts tax payment equal to 7.5268% of

the monthly rate charge. Sales taxes shall be applied to the total of the monthly rate charge and the in lieu of gross receipts tax payment."

**2.** Section 15.645 states: "A seven percent in lieu of gross receipts tax payment shall be charged on customer bills for water, electricity and private street and outdoor area lighting. Said in lieu of tax payments shall be applied by the water and electric department to monthly bills for the above services."

revenue fund of the City annually an amount substantially equivalent to that sum which would be paid in taxes if the water and electric light works were privately owned." [3]

3. In full, Section 102 states:
   The City Council shall from time to time fix, establish, maintain and provide for the collection of such rates, fees or charges for water and electricity and water and electric service furnished by or though the water and electric light works of the city as will produce revenues sufficient to pay the cost of operation and the maintenance of said works in good repair and working order; to pay the principal of and interest on all revenue bonds of the city payable from the revenues of said works; to provide and maintain an adequate depreciation fund for the purpose of making renewals and replacements; to provide a fund for the extension, improvement, enlargement and betterment of said works; to pay the interest on and principal of any general obligation bonds issued by the city to extend or improve said works; *and to pay into the general revenue fund of the city annually an amount substantially equivalent to that sum which would be paid in taxes if the water and electric light works were privately owned.* Such revenues so produced shall be devoted to the purposes so enumerated. The provisions hereof shall be subject at all times to the performance by the city of all covenants and agreements made by it in connection with the issuance, sale or delivery of any revenue bonds of the city payable out of the revenues derived by the city from the operation of its water and electric light works, whether such revenue bonds be heretofore or hereafter issued." (Emphasis added.)
   In the fixing of such rates and charges it shall be the policy of the council, so far as feasible and consistent with the above requirements, to fix and maintain the same at a level not to exceed charges made for the same services by privately owned utilities similarly situated. Payments from the revenues of said water and electric light works shall be made into the depreciation fund monthly in such amounts as may be required by standard engineering and accounting practices applicable to the operation of utilities by municipalities. Said depreciation fund shall be expended only for making renewals and replacements of said water and electric light works or making unusual and extraordinary repairs thereto.
   Payments into the fund established for the making of extensions, improvements, enlargements and betterments of said works shall be made monthly in such sums as may be determined by the council, subject to the provision of the next succeeding paragraph relating to surplus, and such fund shall be expended only for the purposes specified. Said depreciation fund and the fund established for the making

On the monthly utility bill the amount of the PILOT is stated separately from the charges for electricity and water. [4] The funds Columbia collects from the PILOT are earmarked for and deposited into the

of extensions, improvements, enlargements and betterments shall be kept invested as provided by law, or, in the discretion of the council, in bonds, certificates or other obligations of the United States of America.
If any surplus revenue be produced from the operation of said water and electric light works after meeting all of the requirements set forth above, there shall be paid into the fund established for the making of extensions, improvements, enlargements and betterments of said works not less than 20% of such surplus, or an amount which, together with payments made into such fund under the above requirements, shall equal 20% of said surplus. Provided, however, that such fund may be used for the redemption of any outstanding bonds issued by the city for the same purposes, and for the meeting of any extraordinary emergencies that may arise in the operation of said water and electric light works; and, provided further, that said payment from surplus shall not be required to be made cumulative on and in addition to the requirement in Section 7 of the Revenue Bond Ordinance of April 19, 1948, for the retention of 25% of the surplus for extension, improvement and bond redemption purposes, so long as any of the revenue bonds of the city dated May 1, 1948, remain outstanding. The remainder of any surplus shall be paid into the general revenue fund of the city and budgeted like other revenues of the city for any proper municipal purpose, and expended through the regular appropriation process; or such surplus may, in the discretion of the council, be made the basis for reduction of rates in the future.

4. From 1975–80, the PILOT was on a customer's bill for utility services as an "in lieu of gross receipts tax." Admissions' Request 12, Exhibit 5 and Response to First Request for Admissions, number 12. From 1980 to October 1984, the PILOT was shown on utility bills as a "gross receipts tax." Admissions' Request 13, Exhibit 6 and Response to First Request for Admissions, number 13. The record does not indicate how the PILOT was shown on utility bills beyond October 1984. Neither party argues that there is any significance in the change in description of the PILOT on utility bills from an "in lieu of gross receipts tax" to a "gross receipts tax." This change is probably not significant because the PILOT is defined by the City Ordinance sections as an "in lieu of gross receipts tax" despite its description as a "gross receipts tax" on utility bills from 1980 to at least October of 1984.

General Revenue Fund. Columbia uses the General Revenue Fund to finance the operation of Columbia.

### III. *Plaintiff's Argument*

■ Neither the United States nor any of its possessions, institutions or activities can be taxed by states or local subdivisions unless Congress consents. *McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819); *United States v. New Mexico*, 455 U.S. 720, 734, 102 S.Ct. 1373, 1382, 71 L.Ed.2d 580 (1982); *First Agricultural National Bank v. State Tax Commission*, 392 U.S. 339, 340, 88 S.Ct. 2173, 2174, 20 L.Ed.2d 1138 (1968); *Mayo v. United States*, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943).

By applying the three-part test set forth in *United States v. Maine*, 524 F.Supp. 1056 (D.Me.1981), plaintiff argues that the PILOT is a tax. The *Maine* court stated a charge imposed by a state upon the United States is a tax if it fails to meet any one of the three following conditions: 1) the charge must be imposed in a nondiscriminatory manner; 2) the charge must be "a fair approximation of the cost of the benefits" received; and 3) the charge must be structured to produce revenues that will not exceed the total cost to the government of the benefits to be supplied. *Id.* at 1059, citing *Massachuetts v. United States*, 435 U.S. 444, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978). Plaintiff concludes that the PILOT charge fails the second and third conditions.

Plaintiff also argues that the PILOT is "an enforced contribution to provide for the support of [the] government" which is the definition of a tax stated in *United States v. LaFranca*, 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931).

### IV. *Defendants' Argument*

Columbia contends that:
[T]he "PILOT" rate component is a profit, it is clearly not a tax, but simply the measure of profitability. That is, the City Charter has set the level of profit or reasonable return to be that figure which the city would have realized in taxes if the utilities were privately owned. Had the City Charter set profit by some math-

ematical formula unrelated to taxes or possible tax revenues, the government could not and would not contend that a tax was present or implicated. That is, if the Charter simply said that utility rates should include a 7.5268% return, we would not be here. But the fact that the City's profit or rate of return is measured by lost tax revenues should no more concern the federal government than a simple percentage of profit or return, assuming that the percentage is reasonable and applied equally to all consumers.

Defendants' suggestions in opposition at 11–12 (footnotes omitted).

### V. *Discussion*

In *United States v. Maine*, 524 F.Supp. 1056 (D.Me.1981) the issue was whether a "sliding scale of fees" imposed by the State of Maine on federal credit unions was a tax prohibited by the Supremacy Clause of the United States Constitution, Art. VI, cl. 2. The *Maine* court concluded that the three-prong test from *Massachusetts v. United States*, 435 U.S. 444, 464–67, 98 S.Ct. 1153, 1165–67, 55 L.Ed.2d 403 (1978) should be used to determine whether "sliding scale of fees" was a tax.

In *Massachusetts*, the Commonwealth of Massachusetts sought a refund of an annual aircraft registration tax imposed on the Commonwealth by the United States claiming that the United States had violated the implied immunity of a state government from federal taxation. The Supreme Court in *Massachusetts* never questioned and, in fact, assumed without discussion, that the annual aircraft registration tax was a tax. "The constitutional question presented in this case is whether *this tax*, as applied to an aircraft owned by a state and used by it exclusively for police functions, violates the implied immunity of a state government from federal taxation." 435 U.S. at 447, 98 S.Ct. at 1156 (emphasis added). The court concluded that the aircraft registration tax did not violate the implied immunity of the Commonwealth from federal taxation.

In reaching this conclusion, the Supreme Court in *Massachusetts* borrowed a test it

first used in *Evansville–Vanderburgh Airport Authority v. Delta Airlines, Inc.,* 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972). The issue presented in *Evansville* was whether a charge by a state or municipality of $1 per commercial airline passenger to help defray the costs of airport construction and maintenance was an unreasonable burden on interstate commerce in violation of the Commerce Clause of the United States Constitution, Art. I, § 8, cl. 3. *Id.* 405 U.S. at 710, 92 S.Ct. at 1352.

The purpose of the test created in *Evansville* and applied in *Massachusetts* is stated by the Supreme Court in *Massachusetts:*

> Whatever the present scope of the principle of state tax immunity, a state can have no constitutional objection to a revenue measure that satisfies the three-prong test of *Evansville–Vanderburgh Airport Authority v. Delta Airlines, Inc.*—substituting "state function" for "interstate commerce" in that test. So long as the charges do not discriminate against state functions, are based on a fair approximation of use of the system, and are structured to produce revenues that will not exceed the total cost to the Federal Government of the benefits to be supplied, there can be no substantial basis for a claim that the National Government will be using its taxing powers to control, unduly interfere with, or destroy a state's ability to perform essential services. The requirement that total revenues not exceed expenditures places a natural ceiling on the total amount that such charges may generate and the further requirement that the measure be reasonable and nondiscriminatory precludes the adoption of a charge that will unduly burden state activities.

*Massachusetts,* 435 U.S. at 468, 98 S.Ct. at 1167. Therefore, the test used in *Massachusetts* and *Evansville* was intended to prevent essential state functions and interstate commerce from being burdened by excessive taxation. The *Massachusetts* test provides a standard to determine at what point the amount of tax becomes too burdensome to pass Constitutional muster.

Both the *Maine* court and the United States in the instant matter have misapplied the *Massachusetts* test. In their attempts to determine whether a certain charge is a tax, they have improperly seized on a test designed to set the parameters for determining whether the amount of a tax is constitutionally permissible.

In this case the United States objects to the PILOT based on the Supremacy Clause which forbids a state or municipality to tax the federal government without its consent. Thus, the issue in this case is whether the PILOT is a tax and not whether a tax is too burdensome under the Constitution.

The correct approach for determining whether a charge is a tax is found in *United States v. Maryland,* 471 F.Supp. 1030, 1036 (D.Md.1979). In determining whether an environmental surcharge imposed on private utility companies by the state to fund an Environmental Trust Fund was a tax, the court relied both on the Supreme Court's defintion of a tax in *United States v. LaFranca,* 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551 (1931) and on an illuminating discussion about the nature of a tax in *National Cable Television Ass'n v. United States,* 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1148–49, 39 L.Ed.2d 370 (1974). A tax is an "enforced contribution to provide for the support of [the] government." *LaFranca,* 282 U.S. at 572, 51 S.Ct. at 280. Distinguishing between a tax and a fee, the Supreme Court has stated that "a public agency performing ... services may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society." *National Cable Television,* 415 U.S. at 341–42, 94 S.Ct. at 1149. Stated another way, a tax is money taken by a government to be used for public purposes. *See Puglisi v. United States,* 564 F.2d 403, 408 (Ct.Cl.1977).

Applying these tests, the *Maryland* court noted that the Environmental Trust Fund was used for ecological, biological and environmental studies which were "clearly intended to benefit the general public and not merely the electric utilities." *Maryland,* 471 F.Supp. at 1036. "The fact

that obvious benefits accrue to the general public conclusively establishes that Maryland's environmental surcharge is a tax and not a utility rate." *Id.,* citing *National Cable Television.*

■ Here, the PILOT is earmarked for the General Revenue Fund. The General Revenue Fund finances general governmental operations. These governmental operations benefit the general public and not just the utility customers. Therefore, applying the definitions of a tax set forth in *LaFranca* and *National Cable Television,* the PILOT is a tax.

In attempting to distinguish *Maryland,* Columbia argues that the PILOT charge is just the profit component of the charge for utility services furnished to the hospital. Therefore, according to Columbia, when the hospital pays its utility bill (including the PILOT), it is paying for a benefit that only it receives. "The federal government may not avoid payment for the benefit received on the theory that a part of the price is a tax. Rates are simply not taxes under any definition of 'tax.'" Defendants' Suggestions in Opposition at 30.

■ Although the hospital benefits from the utility services furnished by Columbia, Columbia in assessing the PILOT intends to benefit all its residents because the PILOT proceeds are earmarked for the General Fund. Furthermore, although the V.A. may not avoid payment for a benefit received *on the theory that* a part of the price is a tax, there is no doubt that *if part of the price is a tax,* that part of the charge may not be imposed on the United States. Defendants' contention that "rates are simply not taxes under any definition of tax" assumes too much. The issue is whether the PILOT is a tax or just part of the rate for utility services. Obviously, if one assumes that the PILOT is part of the rate, it would not be a tax.

Columbia relies on *United States v. City of Newport News, Virginia,* No. 75–110–NN (E.D.Va.1977) and *Apodoca v. Wilson,* 86 N.M. 516, 525 P.2d 876 (1974) to support its position that the PILOT is not a tax. The issue in *Apodoca* and *Newport News* was whether the *transfer* of excess revenue from utility services into the City's General Fund transformed the excess revenue into taxes. To decide this issue, the courts in *Apodoca* and *Newport News* focused on whether that portion of the utility rate in excess of cost was a profit or a tax. Both courts concluded that the excess was profit and the transfer of that profit into the General Fund did not transform it into a tax.

Here, Columbia is not attempting to transfer excess revenue from the utility account to the General Fund. The PILOT is a predetermined charge earmarked for the General Revenue Fund and unrelated to the profitability of the utility.

Because the PILOT is a tax and because the United States has not consented to this tax, the imposition of the PILOT on the United States violates the Supremacy Clause of the United States Constitution, Art. VI, cl. 2.

### Conclusion

Accordingly, it is hereby ORDERED that:

1) plaintiff's motion for summary judgment is granted;

2) the PILOT charge as applied to the Veterans Administration Hospital in Columbia, Missouri, is an unconstitutional tax;

3) Columbia is permanently enjoined from assessing the PILOT charge against the Veterans Administration Hospital in Columbia, Missouri;

4) within 30 days from the date of this order, the United States shall file a verified claim setting forth the amount of the payments in lieu of gross receipts tax assessed against the Veterans Administration Hospital. The method of computation should be included with the claim; and

5) defendants shall have 30 days to respond to the United States' claim.