UNITED STATES of America, Appellee,

v.

CITY OF COLUMBIA, MISSOURI; Harold Boldt, Finance Director, Appellant.

Nos. 89–1896WM, 89–2782WM.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1990.

Decided Sept. 12, 1990.

Richard G. Carlisle, Kansas City, Mo., for appellant.

Robert W. Metzler, Washington, D.C., for appellee.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The United States brought this action against the City of Columbia, Missouri, asserting that a component of the City's utility rate charged to the Veterans Administration hospital constitutes an unconstitutional tax on the federal government. The district court granted the United States' motion for summary judgment and ordered the City to refund past payments. The City appeals, and we reverse.

## I. BACKGROUND

The City of Columbia, Missouri, is a municipal corporation existing under its Home Rule Charter as authorized by the Constitution of the State of Missouri. The City owns and operates water and electrical utilities. Under section 102 of the City Charter the City Council is required to set rates charging customers for water and electricity. That section provides that the water and electrical rates should be set at levels to produce revenues for six purposes. The first five purposes involve the costs incurred by the City in providing water and electricity and maintaining the utilities. The last factor, underlined in the following quote, provides for the City to seek revenues over and above the cost of providing the goods and services. Section 102 provides in pertinent part:

The City Council shall from time to time fix, establish, maintain and provide for the collection of such rates, fees or charges for water and electricity and water and electric service furnished by or through the water and electric light works of the city as will provide revenues sufficient to pay the cost of operation and the maintenance of said works in good repair and working order; to pay the principal of and interest on all revenue bonds of the city payable from the revenues of said works; to provide and maintain an adequate depreciation fund for the purpose of making renewals and replacements; to provide a fund for the extension, improvement, enlargement and betterment of said works; to pay the interest on and principal of any general obligation bonds issued by the city to extend or improve said works; and *to pay into the general revenue fund of the city annually an amount substantially equivalent to that sum which would be paid in taxes if the water and electric light works were privately owned.*

City of Columbia, Mo., City Charter at § 102 (quoted in *United States v. City of Columbia*, 709 F.Supp. 174, 177 n. 3 (W.D. Mo.1989)).

Pursuant to section 102, the City Council enacted section 15.645 of the Columbia Code of Ordinances, implementing the last phrase of section 102 of the Charter. Section 15.645 of the City's Code of Ordinances provides that "a seven percent in lieu of gross receipts tax payment shall be charged on customer bills" for water and electricity. Columbia Code of Ordinances, § 15.645 (quoted in *City of Columbia*, 709 F.Supp. at 176 n. 2). This charge is also known as the "payment in lieu of taxes," or, the "PILOT."

At all times relevant to this case the City provided water and electrical services to the Harry S. Truman Memorial Hospital, an independent agency of the United States administered by the Veterans Administration ("VA"). Until 1984 the VA paid in full all utility statements submitted to it by the City. Beginning in February 1984, however, the VA began deducting the PILOT charge from its payments to the City, believing that the PILOT constituted an impermissible tax levied on the United States by the City.

In January 1986 the United States filed this action seeking a declaration that the

PILOT was an unconstitutional tax, an injunction prohibiting the assessment and collection of PILOT charges, and a refund of the PILOT amounts previously paid. After some initial discovery the United States moved for summary judgment. The district court granted that motion, holding that under the Supremacy Clause a state cannot tax the federal government and reasoning that the PILOT constituted a tax because it was earmarked for the City's general revenue fund. *City of Columbia*, 709 F.Supp. at 180. The district court accordingly granted the requested declaratory and injunctive relief and awarded the United States $221,472.37, representing $146,821.50 of PILOT paid between January 1, 1980 and December 31, 1983, and interest thereon.

The City now appeals, arguing that the district court erred in concluding that the PILOT is an impermissible tax and in awarding and calculating the United States' refund of its previously paid PILOT charges. We hold that the PILOT does not constitute a tax on the federal government and thus reverse the judgment of the district court.

## II. DISCUSSION

As we review the district court's grant of summary judgment we are bound by the same standard as was the district court. Our review is thus de novo. *Holloway v. Conger*, 896 F.2d 1131, 1134 (8th Cir.1990). Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. We must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990).

█ The parties do not dispute the legal principle that is the basis of this suit. As far back as the landmark case of *McCulloch v. Maryland*, 4 Wheat. 316, 4 L.Ed. 579 (1819), it was recognized that the federal government is immune from taxation by the states absent Congressional authorization. *See Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 109 S.Ct. 1698, 1707, 104 L.Ed.2d 209 (1989). Federal immunity from state taxation is based on the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2. *See South Carolina v. Baker*, 485 U.S. 505, 518–19, n. 11, 108 S.Ct. 1355, 1366, n. 11, 99 L.Ed.2d 592 (1988); *Massachusetts v. United States*, 435 U.S. 444, 455, 98 S.Ct. 1153, 1161, 55 L.Ed.2d 403 (1978). Unlike the states' immunity from federal taxation, which is somewhat limited, the United States' immunity from state taxation is a "blanket immunity." *Baker*, 485 U.S. at 519 n. 11, 108 S.Ct. at 1366 n. 11.

What the parties do dispute is whether the PILOT charged by the City constitutes a tax. In addressing this issue, the district court first considered the United States' contention that under the three-part test set out in *United States v. Maine*, 524 F.Supp. 1056 (D.Me.1981), it is clear that the PILOT is a tax against the United States. The district court concluded that the *Maine* test is inapplicable to this case. *City of Columbia*, 709 F.Supp. at 179. The issue in *Maine* was whether a sliding scale fee imposed by the State of Maine on federal credit unions was an impermissible tax on the federal government. The *Maine* court borrowed the three-part test used by the Supreme Court in deciding whether the Commonwealth of Massachusetts was immune from a federal aircraft registration tax in *Massachusetts v. United States*, 435 U.S. 444, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978).

The immunity question in *Massachusetts* arose in the context of a state's immunity from federal taxation. The states' immunity from federal taxation is more limited than the federal government's immunity from state taxation, and is based on a different constitutional source. *See Baker*, 485 U.S. at 518–19 n. 11, 108 S.Ct. at 1366 n. 11. Generally, the states are immune from federal taxation that would unduly burden essential state functions. *Massachusetts*, 435 U.S. at 459–60, 98 S.Ct. at 1163. Federal immunity from state taxation, however, is a blanket immunity and is not subject to the same limits. *Baker*, 485

U.S. at 518–19 n. 11, 108 S.Ct. at 1366 n. 11. In *Massachusetts,* the Court was considering whether a registration tax levied by the federal government against a state was of a type that could permissibly be levied against a state; it was not considering, as we are here, whether a charge levied by a sovereign was a tax at all. We thus join the district court in refusing to adopt the *Maine* test to determine in this case whether the PILOT is a tax.

The district court believed that "[t]he correct approach for determining whether a charge is a tax is found in *United States v. Maryland,* 471 F.Supp. 1030, 1036 (D.Md.1979)." *City of Columbia,* 709 F.Supp. at 179. There the court addressed whether a state's charge of an "environmental surcharge" against federal agencies purchasing electricity within the state was a tax. The court relied on the definition provided in *United States v. LaFranca,* 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931), where the Court stated that a tax is an "enforced contribution to provide for the support of government." The *Maryland* court noted that it was clear that Maryland's surcharge was used to benefit the general public, and went on to state that "[t]he fact that obvious benefits accrue to the general public conclusively establishes that Maryland's environmental surcharge is a tax and not a utility rate." *Maryland,* 471 F.Supp. at 1036 (citation omitted). Relying on *Maryland,* the district court in this case believed that the dispositive feature of the PILOT that establishes that it is a tax is the fact that it is earmarked for the City's general revenue fund, which benefits the general public and not just utility customers. *City of Columbia,* 709 F.Supp. at 180.

The United States also relies heavily on that factor in this appeal. In addition, the United States argues that, contrary to the City's assertion, the PILOT is not simply the profit component of the utility rate but, rather, is a charge separate from the rate. The United States emphasizes that in its ordinance implementing section 102 of the City Charter the City treated the PILOT separately from the utility rate and even referred to the PILOT as a tax. That ordinance is section 15.645, and it provides, in part, that the 7% in lieu of gross receipts tax shall be applied to monthly bills as follows: "for water, the amount of the customer's bill as determined by the applicable rate, *excluding any other taxes,* multiplied by 1.075268." (emphasis added). Brief for the Appellee, Appendix, at 37 (quoting Columbia Code of Ordinances § 15.645 (1964 ed.)) The United States submits that this language makes it clear that the City views the PILOT as a charge separate from the basic utility rate and that it views the PILOT as a tax.

We find that both the district court and the United States in this case are asking this court to take an excessively narrow approach to this problem. We are not prepared to reduce this case to a question of pure semantics and conclude that the PILOT is a tax because it is described as being "in lieu of a tax" or because in an implementing ordinance the City referred to it as one. Nor do we think it wise to consider dispositive the single fact that the PILOT is earmarked for the City's general revenue fund. Rather, it is our task to consider all the facts and circumstances of record in the case and assess them on the basis of the economic realities to determine the essential nature of the PILOT. *See United States v. LaFranca,* 282 U.S. at 572, 51 S.Ct. at 280 (holding that a particular charge was a penalty rather than a tax, and stating that "[n]o mere exercise of the art of lexicography can alter the essential nature of an act or a thing; and if an exaction be clearly a penalty it cannot be converted into a tax by the simple expedient of calling it such."); *National R.R. Passenger Corp. v. City of New York,* 882 F.2d 710, 715 (2d Cir.1989) (stating that "the label applied to an assessment by a state or local government does not determine whether the assessment is a tax or a non-tax."). *Cf. United States v. City of Detroit,* 355 U.S. 466, 469, 78 S.Ct. 474, 476, 2 L.Ed.2d 424 (1958) (stating that the Court must go "beyond the bare face of the taxing statute to consider all relevant circumstances" in determining whether a

particular tax is levied on the federal government or a related private party).

We conclude that the district court erred in holding that the PILOT constitutes an impermissible tax on the federal government. We believe, as the City has persuasively argued, that the PILOT is simply the profit component of the City's utility rate, a component which is measured by lost tax revenue. An important, threshold principle in this regard—and one that does not appear to be disputed at this point—is that municipalities may permissibly seek some reasonable profit in setting their utility rates. This is not a case in which a party has challenged a municipality's basic power to obtain some measure of profit from its utility enterprise. That a municipality may do so appears accepted. *See Appelmans v. City of Philadelphia,* 826 F.2d 214, 217 (3d Cir.1987) (stating Pennsylvania law, although the profit was derived from a sinking fund reserve rather than the utility rate); *Chocolay Charter Township v. City of Marquette,* 138 Mich. App. 79, 83, 358 N.W.2d 636, 638 (Mich.Ct. App.1984) (per curiam) (stating that "[a] municipality is not required to furnish utility services at cost, but may charge a rate which will yield a profit"); *In re Petitions of Burlington Elec. Light Dept.,* 135 Vt. 114, 115, 373 A.2d 514, 516 (Vt.1977) (stating that state statute "allows municipals a rate of return commensurate with that granted private utilities"); 12 E. McQuillin, *Municipal Corporations,* § 35.37c at 625 (3d rev. ed. 1986) (stating that "[a] city is entitled to a reasonable profit [in operating a utility] and it may even use that profit for other valid municipal purposes"). Nor does the United States apparently contend that it is immune from the City's profit-producing utility rates. That is, it is agreed that the City can seek a profit from its utility customers, including the federal government.

Section 102 of the City Charter directs the City Council to do just that. It instructs that the Council should pursue six objectives in setting its utility rates; the first five have to do with covering the cost of operating the utilities, and the last has to do with realizing surplus revenue over and above costs. The United States challenges the City's assertion that the PILOT is the profit component. It makes much of the fact that section 102 does not explicitly identify the PILOT as profit. We recognize that, but nonetheless are convinced that we are not engaging in any distortion of reality in stating that profit is plainly what the PILOT is intended to achieve. The first five factors clearly have to do with the City's recovery of the cost of the utility, and the sixth seeks something beyond cost, which can fairly be described as profit.

The Charter also provides guidance on the extent of the profit that should be sought; it directs that the City should profit from its utility enterprise in an amount equivalent to the sum which would be paid in taxes if the utility were privately owned. In other words, the City Charter has used lost tax revenues as the benchmark in quantifying the amount of profit it will realize from its utility.

We do not think that by using lost tax revenues as a measuring rod for profit the City has somehow transformed that part of its utility rate into a tax. Viewed in its essence, the PILOT is a part of the utility rate and is unlike a tax in many significant respects. It is set out in that portion of the City Charter that deals with utility rates and is listed without distinction along with the other factors to be considered in fixing the rate. It is not contained in a section dealing with the City's taxing power. It is charged to the customer as part of the price of consuming the City's goods and services. While the payment of a tax does not transfer ownership, the payment of a purchase price—in this case, the utility rate, which includes the PILOT—transfers ownership of water and electricity. And, while failure to pay a tax results in civil and sometimes criminal penalties, the failure to pay a portion of a utility rate results in termination of services. The United States' obligation to pay the PILOT arises only from its consensual purchase of the City's property; it does not arise automatically, as does tax liability, from the United States' status as a property owner, resi-

dent, or income earner. When the United States purchases water, electricity, and related services, and then pays the utility bill, it does so as a vendee pursuant to its voluntary, contractual relationship with the City. The City imposes the charge not in its capacity as a sovereign, but as a vendor of goods and services. *See National Cable Television Ass'n. v. United States*, 415 U.S. 336, 340–41, 94 S.Ct. 1146, 1149, 39 L.Ed.2d 370 (1974) (discussing the difference between taxes and fees); *National R.R. Passenger Corp.*, 882 F.2d at 715–16 (discussing the difference between tax and rent obligations); *In re Lorber Industries of California, Inc.*, 675 F.2d 1062, 1066 (9th Cir.1982) (difference between taxes and fees).

Thus, in many very important respects the PILOT charged by the City bears the qualities of a profit component of a utility rate, rather than a tax. The United States' position that the PILOT is a tax is essentially based on its argument that because the PILOT is charged "in lieu of a tax" and is referred to as a tax in an ordinance it must be deemed a tax. As stated above, we think it important to look beyond the words used to describe the PILOT and examine the realities. Under that approach, we conclude that the PILOT is nothing more than the City's vehicle for making a reasonable profit from its utility. The United States does not challenge the City's power to do that; nor does it claim that it is exempt from paying a profit-producing utility rate.

We do not believe that our holding that the PILOT is not a tax is contrary to the Supreme Court's statement in *LaFranca* that "[a] tax is an enforced contribution to provide for the support of government...." 282 U.S. at 572, 51 S.Ct. at 280. The United States, as well as the district court, relied on this language as though it provided a litmus test for determining whether or not a charge is a tax. We do not think that the Court in *LaFranca* intended by the above-quoted language to establish broadly that in all instances where money is exacted for support of government the payment constitutes a tax. The Court in *LaFranca* did not state that

its description of a tax was to serve as the singular approach to ascertaining whether something is a tax. Rather, the Court used that language as a broad description of the nature of a tax. We recognize that the PILOT is like a tax in that it is earmarked for the City's general municipal fund. However, we decline to consider that fact alone to the neglect of the many other factors discussed above that reveal that the PILOT is part of the City's utility rate.

In essence, the PILOT is not a tax and thus is not impermissibly charged against the United States under the Supremacy Clause of the United States Constitution. Because we so hold, we need not address the City's arguments that the district court erred in awarding and calculating the refund to the United States.

## III. CONCLUSION

The district court's grant of summary judgment to the United States is reversed, as is the district court's order to the City of Columbia to pay the United States $221,472.37 in past PILOT payments, with interest. Summary judgment to be entered in favor of the City of Columbia.