**Bradley ROTH, individually and d/b/a Brad's Implement & Auto, Plaintiff,**

v.

**NEW HOLLAND NORTH AMERICA, INC., Defendant.**

No. 3:02–CV–90124.

United States District Court, S.D. Iowa, Davenport Division.

Feb. 4, 2004.

Peter C. Riley, Esq., Tom Riley Law Firm, Cedar Rapids, IA, for plaintiff.

Joseph Laverty, Wessels & Pautsch, Davenport, IA, Kelly S. Moothart, Michael J. Gorman, Daniels & Kaplan PC, Kansas City, MO, for defendant.

### MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff Bradley Roth, individually and d/b/a Brad's Implement & Auto, initially filed a claim against Defendant New Holland North America, Inc. ("New Holland") for wrongful termination of the Dealer Agreement entered into between the two parties in state court in Henry County, Iowa, on June 25, 2002. Defendant an-

swered Plaintiff's Petition and thereafter the parties conducted discovery while the action was still pending in state court. On October 31, 2002, Defendant removed the action to this Court, claiming jurisdiction under 28 U.S.C. § 1332.

On October 24, 2003, Defendant filed a Motion for Summary Judgment, requesting that this Court grant summary judgment to Defendant on Plaintiff's claim for wrongful termination. Defendant argues that the undisputed facts on the record demonstrate that 1) Defendant complied with the requirements of Iowa Code § 322F in terminating Plaintiff's Dealer Agreement; and 2) the testimony of Plaintiff's damages expert is inadmissible, therefore Plaintiff has presented no admissible evidence of damages. Plaintiff resisted Defendant's motion and oral argument was held on January 21, 2004. At oral argument, the Court requested further factual briefing from the parties on the issue of New Holland dealers similarly situated to the Plaintiff. Both parties subsequently provided the additional briefing requested by the Court, and the matter is now fully submitted. For the reasons detailed below, Defendant's Motion for Summary Judgment is **granted.**

## I. FACTS

Plaintiff Bradley Roth operates Brad's Implement & Auto, an implement dealer in Henry County, Iowa. Defendant New Holland is a manufacturer of, among other things, agricultural and construction equipment. In 1991, Plaintiff entered into a Dealer Agreement with Defendant, pursuant to which Plaintiff was authorized to sell certain New Holland equipment. Although the 1991 Dealer Agreement did not explicitly spell out the sales goals that Plaintiff was obligated to meet,[1] there is

undisputed testimony that between 1998 and the time when Plaintiff's Dealer Agreement was terminated, New Holland required each of its dealers to sell 90% of the state-wide average market share for New Holland products.

In early 1999, Doran Herritt, a market representation manager for New Holland, examined Plaintiff's performance of his obligations under the Dealer Agreement for the year 1998. Mr. Herritt concluded that Plaintiff's dealership was Defendant's worst non-performing dealer in Iowa, both when measured against the 90% market share objective and in terms of dollars of lost revenue. In a letter dated June 1, 1999, Mr. Herritt placed Plaintiff on "cure," a process that allows a New Holland dealer the opportunity to improve his performance in order to avoid termination of the Dealer Agreement. The letter informed Plaintiff that his 1998 performance was a breach of the 1991 Dealer Agreement and that if Plaintiff failed to improve his performance and obtain his 1999 market share objectives by December 31, 1999, his Dealer Agreement could be terminated.

On March 15, 2000, Defendant New Holland sent Plaintiff another letter informing him that he had failed to meet Defendant's sales objectives in all but two of seven listed product categories. This letter indicated that "New Holland has elected to continue the cure period through the end of 2000 to give you every opportunity to improve your sales performance and cure this breach ... [Y]ou must meet these objectives by December 31, 2000." Again, Defendant notified Plaintiff that his Dealer Agreement could be terminated if Plaintiff was unable to meet the sales objectives established by New Holland.

---

**1.** The 1991 Dealer Agreement specified that Plaintiff "shall promote vigorously and aggressively the sale" of New Holland products within the Plaintiff's primary area of responsibility ("PAR") and shall obtain a reasonable share of the total product market.

Subsequent to Plaintiff's receipt of the March 15, 2000 letter, Plaintiff and Defendant entered into a new Dealer Agreement, effective April 1, 2000, which explicitly required Plaintiff to sell 90% of the state-wide average market share for New Holland products. In an August 1, 2000 letter, Defendant notified Plaintiff that his performance through June of 2000 constituted a breach of the 2000 Dealer Agreement, in that Plaintiff had failed to meet his objectives in six of seven listed categories. Again, Defendant New Holland afforded Plaintiff additional time, until December 31, 2000, to meet his objectives under the Agreement. As with the previous letters, this letter indicated that failure to achieve the market share objectives for the year could result in termination of Plaintiff's Dealer Agreement.

On March 1, 2001, Defendant sent a letter to Plaintiff reminding Plaintiff that he had repeatedly failed to cure his sales performance, failing to meet the market share objectives established by Defendant in 1998, 1999, and 2000. The letter indicated that Plaintiff had "left us with no choice but to exit our business relationship" and notified Plaintiff that the Dealer Agreement would be terminated as of June 30, 2001.

Plaintiff's failure during 1998, 1999, and 2000 to make sales that met New Holland's 90% market share objective as described above is undisputed.[2]

## II. SUMMARY JUDGMENT

### A. The Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if the dispute over it might affect the outcome of the suit under the governing law. *Id.*

The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In meeting its burden, the moving party may support his or her motion with affidavits, depositions, answers to interrogatories, and admissions. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate the specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(c), 56(e); *Celotex Corp.,* 477 U.S. at 322–323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts University School of Medicine,* 976 F.2d 791, 794 (1st Cir.1992) (citations omitted). In order to survive a motion for summary judgment, the nonmoving party must present enough evidence for a reasonable jury to return a

---

**2.** Plaintiff does dispute some of the sales numbers contained in the March 1, 2001 letter from Defendant. However, even assuming Plaintiff was correct in asserting that he sold more tractors than he received credit for in the March letter, Plaintiff still failed to reach the 90% market share objective in the relevant category.

verdict in his or her favor. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

On a motion for summary judgment, the Court is required to "view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences." *United States v. City of Columbia,* 914 F.2d 151, 153 (8th Cir.1990). The Court does not weigh the evidence or make credibility determinations. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *Id.*

**B. "Good Cause" under Iowa Code § 322F**

Plaintiff's claim in this lawsuit is that Defendant's termination of the Dealer Agreement between the two parties violated Iowa Code § 322F. Pursuant to § 322F.2(1),

> [a] supplier shall terminate a dealership agreement by cancellation, nonrenewal or a substantial change in competitive circumstances only upon good cause and upon at least ninety days' prior written notice delivered to the dealer by certified or registered mail. The notice must specify each deficiency constituting good cause for the action. The notice must also state that the dealer has sixty days to cure a specified deficiency ... [I]f the deficiency is based upon inadequate representation of a manufacturer's product relating to sales, ... the notice must state that the dealer has eighteen months to cure the deficiency.[3]

Defendant argues in its motion that it provided Plaintiff with appropriate notice of termination and opportunity to cure the alleged deficiencies in Plaintiff's performance under the Agreement. Plaintiff does not dispute that Defendant complied with the notice requirements specified by the statute. Thus, the only issue remaining is whether Defendant indeed had "good cause" under the statute to terminate the agreement. "Good cause" is defined in § 322F.1(5) and includes the following:

> a. The dealer fails to substantially comply with an essential and reasonable requirement imposed upon the dealer by the dealership agreement, but only if that requirement is also generally imposed upon similarly situated dealers.
> o. The dealer has inadequately represented the manufacturer's product relating to sales when compared to similarly situated dealers.

The parties appear to agree that Defendant's termination of the dealer agreement between it and Plaintiff is properly analyzed under one or both of the above definitions of good cause. The plain language of § 322F.1(5) indicates that a supplier can terminate an agreement for good cause if any one of the conditions enumerated in subsection 5 occur. If the Defendant had good cause under either subsection 5(a) or subsection 5(o), then termination of the dealer agreement was authorized under § 322F.2(1). Defendant New Holland need not demonstrate that it had more than one basis for the good cause necessary to terminate the Dealer Agreement.

The Court notes initially that neither party cited to any cases interpreting Iowa Code § 322F. The Court also failed to find any such cases. Thus, it interprets § 322F as a matter of first impression. The cases cited by Defendant in support of its argument that it had good cause to terminate the Dealer Agreement with Plaintiff are largely inapplicable to this

---

**3.** The 2003 amendments to § 322F changed the language of § 322F.2(1), but do not affect the instant matter. The citation to § 322F.2(1) above contains the pre-amendment language.

Court's consideration of Defendant's summary judgment motion. First, these cases all deal with termination of dealer agreements under the law of states other than Iowa, where the standard for termination differs. *See Ormsby Motors, Inc. v. General Motors Corp.*, 842 F.Supp. 344 (N.D.Ill.1994) (reviewing termination under Illinois Motor Vehicle Franchise Act); *L–O Distributors, Inc. v. Speed Queen Co.*, 611 F.Supp. 1569 (D.Minn.1985) (reviewing termination of distributor agreement under a provision of the Wisconsin Fair Dealership Law which defines "good cause" in a manner similar to subsection 5(a); however, the opinion contains no discussion of any provision similar to subsection 5(*o*) of Iowa law); *Malone v. Crown Central Petroleum Corp.*, 474 F.Supp. 306 (D.Md. 1979) (reviewing franchise termination under Maryland law and federal Petroleum Marketing Practices Act); *Davis Motors v. Transportation Comm'n*, 114 Wis.2d 590, 337 N.W.2d 856 (1983) (reviewing franchise termination under Wisconsin law); *Nagle Motors, Inc. v. Volkswagen North Central Distributor, Inc.*, 51 Wis.2d 413, 187 N.W.2d 374 (1971) (reviewing dealership termination under Wisconsin law). Additionally, the majority of the decisions cited by Defendant involve a court making findings of fact, rather than determining the legality of the challenged termination on summary judgment. *See Ormsby*, 842 F.Supp. 344 (decision on preliminary injunction after conducting a hearing and receiving witness testimony, exhibits, and party stipulations); *L–O Distributors*, 611 F.Supp. 1569 (post-trial opinion); *Malone*, 474 F.Supp. 306 (post-trial opinion); *Nagle Motors*, 51 Wis.2d 413, 187 N.W.2d 374 (*court review of agency decision*). The Court emphasizes that its function at the summary judgment stage is not to weigh facts and make credibility determinations, but rather to determine whether there is a factual dispute such that a reasonable jury could return a verdict in favor of the non-

moving party. *Anderson*, 477 U.S. at 252, 257, 106 S.Ct. 2505.

1. § 322F.1(5)(*o*): Inadequate Representation When Compared to Similarly Situated Dealers

Under Iowa law, in order to prevail in a suit for improper termination of a dealership agreement under 5(*o*), a dealer must prove by a preponderance of the evidence that during the applicable time period preceding termination of a dealership agreement the dealer adequately represented the manufacturer's product relating to sales when compared to similarly situated dealers. *See* Iowa Code § 322F.1(5)(*o*). The Court finds that Plaintiff has failed to present any evidence that establishes a genuine dispute about Defendant's ability to terminate Plaintiff based upon good cause as defined by subsection 5(*o*).

To understand subsection 5(*o*), a comparison with subsection 5(a) is instructive. Subsection 5(a) contemplates a two-part good cause inquiry. First, was the requirement with which the dealer failed to comply essential and reasonable? Second, if reasonable, was that requirement also generally imposed upon similarly situated dealers? A negative response to either question means that a supplier did not have good cause. The first part of the inquiry does not require any information about similarly situated dealers. Only after a determination of reasonableness is reached is information about similarly situated dealers relevant.

In subsection 5(*o*), however, the inquiry is collapsed. Subsection 5(*o*) requires a determination about whether a "dealer has inadequately represented the manufacturer's product relating to sales when compared to similarly situated dealers." The heart of the inquiry is whether the dealer's sales measured up to sales by similarly situated dealers of the supplier's products.

A supplier cannot terminate a dealer for good cause where the dealer has performed at a level commensurate with similarly situated dealers. It is impossible to determine whether a dealer adequately represented the supplier's products within the meaning of subsection 5(*o*) without examining the performance of similarly situated dealers. Unlike subsection 5(a), subsection 5(*o*) does not contemplate any analysis of performance in the absence of information about similarly situated dealers.

In support of summary judgment, Defendant points to the following facts. First, Plaintiff admitted during his deposition that he continuously failed to adequately represent Defendant New Holland's products relating to sales. This failure, Defendant argues, arose out of Plaintiff's continuous failure to meet the market share objective established by Defendant. Second, the market share objectives that applied to Plaintiff were the same objectives that applied to all of New Holland's Iowa dealers, as well as their dealers in the rest of the country.

Plaintiff's resistance brief conflates Plaintiff's arguments under subsection 5(a) and 5(*o*), however the gist of Plaintiff's argument under subsection 5(*o*) seems to be that 1) there is no evidence that the other dealers upon whom the 90% market share objective was imposed were similarly situated to Plaintiff; 2) Plaintiff's territory created an "unusual situation" for him, such that it would have been impossible for him to meet Defendant New Holland's market share requirements; and 3) Plaintiff cannot be said to have inadequately represented sales of New Holland products where Defendant did not provide Plaintiff with all the product he needed in order to demonstrate and sell their line of tractors and farm implements. Responding to Plaintiff's brief, Defendant points out that Plaintiff has identified no dealers, whether similarly situated or not, who received better or different treatment than Plaintiff.

Given the sparseness of the record on the issue of similarly situated dealers and its importance in deciding whether there existed a genuine factual dispute under subsection 5(*o*), the Court requested at oral argument that the parties submit the full text of the depositions of Plaintiff and Doran Herritt, Defendant New Holland's market representation manager, as well as any additional relevant evidence. The Court further requested a letter from each party citing to relevant portions of the record dealing with the issue of similarly situated dealers.

The Court finds that Plaintiff has not demonstrated that he adequately represented New Holland's products when compared to similarly situated dealers. In making this finding, the Court does not rely on Plaintiff's statements when deposed that he did not adequately represent New Holland's products. Although Defendant argues that these statements constitute admissions by Plaintiff that his claim fails under subsection 5(o), after reading Plaintiff's deposition transcript the Court believes that in the context that Plaintiff made the statements, they constituted an admission of only the fact that Plaintiff failed to meet the market share objectives established by New Holland. Whether performance at a level under the specified objective nonetheless constituted adequate representation is a separate question.

The Court does find persuasive the complete lack of facts in the record regarding similarly situated dealers. None of Plaintiff's citations in the initial or additional briefing go to the issue of similarly situated dealers. Rather, all the citations point to particular problems Plaintiff perceived within *his own* dealership territory. This evidence goes mainly go to the issue of

reasonableness, which is relevant in the subsection 5(a) inquiry, but of questionable utility in the Court's analysis of subsection 5(o) in the absence of information about similarly situated dealers. Plaintiff's argument seems to be that his territory was unique, such that no valid comparison can be drawn with other dealers. The statute does not indicate how to determine whether a dealer has adequately represented a supplier's products under subsection 5(o) where no similarly situated dealers exist. The Court, however, is not confronted with this situation since Plaintiff has presented no evidence from which a reasonable jury could infer that there were no New Holland dealers similarly situated with Plaintiff.

If there are similarly situated New Holland dealers somewhere whose sales figures are on par with those of the Plaintiff, the Court is unaware of them because Plaintiff has presented no such evidence. In his deposition, Plaintiff did testify about two other New Holland dealers in the state of Iowa, Plank Implement in Columbus Junction, Iowa and Capitol Equipment in Iowa City, Iowa. Plaintiff testified that he believed these dealers were treated better or differently than him. However, the specific testimony given by Plaintiff does not support this belief. Regarding Plank Implement, Plaintiff merely testified that someone from that dealership "told me he lost his floor plan because of low sales, lower than the minimum." Plaintiff also testified that he did not know anything about Plank Implement's sales performance as compared to Plank Implement's objectives in the years 1999, 2000, 2001, or 2002, nor did he know what Plank Implement's objectives for those years actually were for any category of New Holland product. Plaintiff also testified that he did not know for sure what Plank Implement's territory was, nor whether that territory had ever changed during the over 20 years that Plank Implement had been a New Holland dealer. Further, Plaintiff did not know whether Plank Implement ever received a "cure" letter in 1999 or 2000 because of failure to meet sales objectives.

Plaintiff had similarly little information to offer about Capitol Equipment's alleged better or different treatment. He knew nothing about Capitol Equipment's market share objectives from 1998 to 2000, nor did he know anything about Capitol Equipment's performance in those years when compared with its market share objectives.

Plaintiff's brief asserts his belief that it is "inappropriate to find that [Plaintiff] is not adequately representing New Holland's products … where his territory is different than other territories." The only record evidence discussing the territory of others is that regarding Capitol Equipment and Plank Implement. Plaintiff testified that he was not given the option not to carry certain New Holland lines, like other dealers were. It seems Plaintiff may be trying to argue that Capitol Equipment and Plank Implement were similarly situated dealers and that because Capitol Equipment and Plank Implement were not required to sell certain categories of implements—namely, four-wheel drive tractors and combines—that Plaintiff's poor performance in these two categories, which he would have preferred not to carry, is excused as adequate when compared to similarly situated dealers. However, Plaintiff has offered no information about why he believes Capitol Equipment and Plank Implement were similarly situated. Doran Herritt testified that whether a dealer is required to sell certain categories of products is determined by industry records of whether a particular category of implement is generally sold in a particular dealer's territory. Plaintiff has offered no evidence to indicate whether, like Plaintiff, Capitol Equipment and Plank Implement were located in territories where four-

wheel drive tractors and combines were routinely sold.

In short, Plaintiff has not provided any evidence from which a reasonable factfinder could infer that his sales constituted "adequate representation" when compared with similarly situated dealers. No reasonable jury could find that Plaintiff had adequately represented New Holland products with respect to sales when compared to similarly situated dealers because there is no relevant evidence regarding the presence, absence, or characteristics of similarly situated dealers in the record. Rule 56 mandates that summary judgment be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Plaintiff bears the burden at trial of establishing that he adequately represented New Holland's products when compared with similarly situated dealers, therefore Plaintiff's failure to make a sufficient evidentiary showing on this point mandates that this Court enter summary judgment in favor of Defendant New Holland.

### 2. § 322F.1(5)(a): Essential and Reasonable Requirement

Since the Court's determination that Plaintiff failed to produce any evidence demonstrating that Plaintiff's sales of New Holland products were adequate in comparison to similarly situated dealers is dispositive as to Plaintiff's claim, the Court need not decide whether Defendant also had good cause to terminate the Dealer Agreement under subsection 5(a). The Court refrains from offering a speculative analysis under subsection 5(a) because it is unnecessary in this case and because of the lack of guidance from Iowa courts on this issue.

### C. Damages

Finally, because the Court's decision that Plaintiff has not presented the requisite evidence to avoid summary judgment on its claim that Defendant did not have good cause to terminate the Dealer Agreement under subsection 5(*o*) is dispositive, the Court need not decide whether Defendant is entitled to summary judgment on the theory that Plaintiff has presented no admissible damages evidence.

### III. ORDER

For the reasons detailed above, summary judgment is hereby granted in favor of Defendant New Holland.

IT IS SO ORDERED.