524 F.Supp. 1056 (1981)
UNITED STATES of America, Plaintiff,
v.
STATE OF MAINE, et al., Defendants.
Civ. No. 77-262 P.
United States District Court, D. Maine.
October 13, 1981.
*1057 Richard S. Cohen, U. S. Atty., Portland, Me., Steven R. Bisker, William L. Shraberg, M. Carr Ferguson, John J. McCarthy, Tax Division Dept. of Justice Washington, D. C., for plaintiff.
Peter B. Bickerman, Linda Pistner, Asst. Attys. Gen., State of Maine, Augusta, Me., for defendants.

MEMORANDUM OF OPINION AND ORDER OF THE COURT
GIGNOUX, Chief Judge.
The United States of America has brought this action against the State of Maine and the Superintendent of the Maine Bureau of Consumer Protection seeking a declaratory judgment that federal credit unions operating within the State of Maine are not liable for the payment of so-called sliding scale fees sought to be imposed by defendants pursuant to Section 6-203(2) of the Maine Consumer Credit Code, 9-A M.R. S.A. § 1-101 et seq. Plaintiff also requests an injunction prohibiting defendants from imposing such fees. Jurisdiction is founded upon 28 U.S.C. § 1345. The matter is before the Court on cross-motions for summary judgment. See Fed.R.Civ.P. 56. The record consists of the pleadings and affidavits submitted by the parties. The issues have been comprehensively briefed and argued.
Section 6-203 of the Maine Consumer Credit Code (the Code), 9-A M.R.S.A. § 6-203, establishes a set of fees to be paid by persons making consumer loans within the State of Maine (creditors). Section 6-203(2) provides that such persons must pay a sliding scale fee computed on the amount of the original unpaid balances of such loans.[1] By Section 6-203(5) all such fees *1058 are appropriated for use by the Superintendent of the Bureau of Consumer Protection; funds not used in one year are to be carried forward to be expended for the same purposes in the following year.
The State of Maine has sought to impose sliding scale fees pursuant to Section 6-203(2) of the Code on federal credit unions operating within the State of Maine which make consumer credit loans within the meaning of the Code. The United States asserts that imposition of these fees would violate both Section 1768 of the Federal Credit Union Act (the FCUA), 12 U.S.C. § 1751 et seq., and the Supremacy Clause of the United States Constitution, art. VI, cl. 2. For reasons to be stated, the Court agrees.
Section 122 of the FCUA, 12 U.S.C. § 1768, expressly exempts federal credit unions from all taxation except nondiscriminatory taxes on real property and tangible personal property.[2] Under the Supremacy Clause, as interpreted in a line of cases dating to McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 436-37, 4 L.Ed. 579 (1819), federal instrumentalities are immune from taxation by a State, unless such taxation is specifically authorized by Congress. See, e. g., First Agricultural National Bank v. State Tax Commission, 392 U.S. 339, 340-41, 88 S.Ct. 2173, 2174, 20 L.Ed.2d 1138 (1968); Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 212-13, 41 S.Ct. 248, 249, 65 L.Ed. 577 (1921); United States v. State Tax Commission, 481 F.2d 963, 969 (1st Cir. 1973).
The State of Maine concedes that if federal credit unions are federal instrumentalities and the sliding scale fee is properly regarded as a tax, that fee could not permissibly be imposed on the federal credit unions. The State contests, however, both elements of that proposition; the State argues that federal credit unions are not federal instrumentalities and that the sliding scale fees are in fact "fees," not taxes. Two questions are thus presented: (1) Are federal credit unions federal instrumentalities? (2) Is the sliding scale fee a fee or a tax? The Court will treat separately each of these questions.
(1) Federal Instrumentalities? The State's first contention, that federal credit unions are not federal instrumentalities, need not long detain the Court.
Federal credit unions are nonprofit cooperative associations of individuals organized under the FCUA "for the purpose of promoting thrift among [their] members and creating a source of credit for provident or productive purposes." 12 U.S.C. § 1752(1). They are authorized to make loans to their members and to invest in securities of the United States and in specified other securities. 12 U.S.C. § 1757. They are chartered and extensively regulated by the National Credit Union Administration.[3] 12 U.S.C. § 1754 (chartering); id. §§ 1751-90 and 12 C.F.R. §§ 700.1-761.2 (regulation).
Congress originally authorized the establishment of federal credit unions in 1934, primarily to deal with the problems of scarce credit and high interest rates. S.Rep.No.555, 73d Cong., 2d Sess. (1934). Through the federal credit unions the federal government makes possible low cost loans to members of those credit unions. Without question, they thus perform an important governmental function. See Federal *1059 Land Bank v. Bismarck Lumber Co., 314 U.S. 95, 102, 62 S.Ct. 1, 5, 86 L.Ed. 65 (1941).[4] Federal credit unions are also authorized to act as fiscal agents of the United States and as depositories of public money, 12 U.S.C. § 1767, functions which have been recognized as important purposes of the federal government. See Smith v. Kansas City Title & Trust Co., supra 255 U.S. at 209-10, 41 S.Ct. at 248.
This Court holds, as have other courts addressing this issue, that federal credit unions are instrumentalities of the federal government engaged in the performance of important governmental functions. See United States v. California State Board of Equalization, No. CV 81-1588-R (C.D.Cal. Aug. 26, 1981); Electrical Federal Credit Union v. Heckers, No. C-13176 (Denver Cty. Dist. Ct., Colo. Dec. 7, 1970); Tabco Federal Credit Union v. Goldstein, No. 2836 (Baltimore Cty. Cir. Ct., Md. June 22, 1964), 1 Md. Tax Cases (CCH) ¶ 200-411.
(2) Tax or Fee? A considerably more difficult question is whether the exaction at issue is a tax or a fee. In making that determination, the Court must look behind the label attached by the State to the true nature of the charge. City of Detroit v. Murray Corp., 355 U.S. 489, 492, 78 S.Ct. 458, 460, 2 L.Ed.2d 441 (1958). Courts have announced a number of somewhat different formulations for distinguishing a fee from a tax; in the present case this Court is persuaded that the appropriate standard is the three-prong test announced by the Supreme Court in the analogous context of state immunity from federal taxation: (1) Is the charge imposed in a nondiscriminatory manner? (2) Is the charge "a fair approximation of the cost of the benefits" received? and (3) Is the charge structured to produce revenues that will not exceed the total cost to the government of the benefits to be supplied? Massachusetts v. United States, 435 U.S. 444, 464-67, 98 S.Ct. 1153, 1165-67, 55 L.Ed.2d 403 (1978).
The sliding scale fee at issue clearly satisfies the first part of the test. It applies to all entities engaged in "the extension of consumer credit transactions" in the State of Maine, 9-A M.R.S.A. § 6-201, and hence does not discriminate against federal credit unions.
The present exaction fails, however, the second part of the test. In announcing the three-part test, the Supreme Court emphasized that "[a] governmental body has an obvious interest in making those who specifically benefit from its services pay the cost ...." Massachusetts v. United States, supra at 462, 98 S.Ct. at 1164 (emphasis added). As this language makes clear, the "benefits" to be examined in applying the test are the benefits received by those on whom the charges are imposed, not merely benefits to the public at large. See also id. at 467-69, 98 S.Ct. at 1167-68; National Cable Television Association v. United States, 415 U.S. 336, 340-41, 94 S.Ct. 1146, 1148-49, 39 L.Ed.2d 370 (1974) (a public agency "may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society").
Defendants argue that the Bureau of Consumer Protection provides federal credit unions direct benefits such as educational programs, informal advice, and review of consumer credit forms, as well as the indirect benefits accruing from public confidence in the integrity of consumer credit institutions. While federal credit unions undoubtedly derive some benefit from the State's regulatory system, a fair reading of the Code and its legislative history renders inescapable the conclusion that these benefits are merely an incidental by-product of a program designed for the central purpose *1060 of protecting consumers and the public at large.
In reporting the proposed Code to the Maine Legislature, its Committee on Business Legislation stated unequivocally: "Perhaps the most significant protection for the consumer is the establishment of a state agency whose sole responsibility is to protect the consumer and which is self-financing from fees and charges paid by creditors." Committee on Business Legislation, Report on Its Study of the Maine Consumer Credit Code 10 (report to the 106th Maine Legislature 1974) (emphasis added). In both that report and the ensuing legislative discussion of the Code, its objectives are described almost entirely in terms of benefits to consumers. See, e. g., Report on Its Study of the Maine Consumer Credit Code, supra at 4-12; 2 Legis. Record, 106th Legis., 1st Spec. Sess. 1816-17, 2266-67 (1974).
Most importantly, the Code itself is virtually devoid of any specific direct benefits to the lending institutions. The statement of purposes, 9-A M.R.S.A. § 1-102(2), emphasizes benefits to consumers and the general public. Moreover, with the possible exception of the provisions authorizing the Bureau of Consumer Protection to provide advice on the Code's meaning and to make studies to effectuate the purposes of the Code, 9-A M.R.S.A. § 6-104, which may be regarded as direct services made available to federal credit unions, the Code consists almost exclusively of regulations for the protection of consumers and provisions for the enforcement of those regulations. Under these circumstances, the sliding scale fees at issue are in no sense a fair approximation of the cost of the benefits received by the institutions being charged. See United States v. Maryland, 471 F.Supp. 1030, 1035-36 (D.Md.1979).
Finally, the sliding scale fee fails the third part of the three-prong test. The revenue generated by the fee is earmarked for the exclusive use of the Bureau of Consumer Protection and does not go into the State's general fund. Nevertheless, it cannot be doubted that the fee is so structured as to generate funds in excess of those used to provide benefits to the institutions being charged, since, as discussed above, the Bureau and its activities primarily benefit consumers and the public at large, not the institutions on which the fees are imposed.[5]
Fears voiced by defendants concerning the scope of this ruling are unjustified. The present case does not involve the imposition of a user fee, as in Massachusetts v. United States, supra (user fee financing provision of air navigational facilities and services), and hence does not affect the validity of local sewer charges, water charges and automobile registration fees, as defendants contend. Nor does this case involve a fee for the grant of the privilege to do business, as in National Cable Television Association v. United States, supra, and Board of Overseers of the Bar v. Lee, 422 A.2d 998 (Me.1980), appeal dismissed, 450 U.S. 1036, 101 S.Ct. 1751, 68 L.Ed.2d 233 (U.S.1981).[6] Instead, the sliding scale fee at issue constitutes "`an enforced contribution to provide for the support of government'" a tax, United States v. Mississippi Tax Commission, 421 U.S. 599, 606, 95 S.Ct. 1872, 1877, 44 L.Ed.2d 404 (1975), quoting United States v. La Franca, 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931). As a tax, its imposition on federal credit unions is barred both by the express statutory prohibition of 12 U.S.C. § 1768 and by the Supremacy Clause, as interpreted in McCulloch v. Maryland, supra, and its progeny.

* * *
*1061 Since the record before the Court shows that there is no genuine issue as to any material fact and that the United States is entitled to a judgment as a matter of law, Fed.R.Civ.P. 56(c), plaintiff's motion for summary judgment is granted; defendants' motion for summary judgment is denied; and judgment will be entered declaring federal credit unions in the State of Maine exempt from liability for the sliding scale fees imposed by Section 6-203(2) of the Maine Consumer Credit Code, 9-A M.R. S.A. § 6-203(2), and permanently enjoining defendants from imposing such sliding scale fees on federal credit unions operating within the State of Maine.
IT IS SO ORDERED.
NOTES
[1] The current fee established by Section 6-203(2) is $15.00 for each $100,000 of the original unpaid balances arising from consumer credit transactions executed by the creditor during the preceding calendar year. Section 6-203(1) also establishes a fixed annual "notification" fee of $10.00 for each creditor. In addition, Section 6-203(4) provides that each creditor whose records are examined shall be assessed separately for the actual expenses incurred in such examination. These aspects of the Code are not challenged in the present case.
[2] Section 122 of the FCUA provides, in relevant part:

The Federal credit unions organized hereunder, their property, their franchises, capital, reserves, surpluses, and other funds, and their income shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any real property and any tangible personal property of such Federal credit unions shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed. 12 U.S.C. § 1768.
[3] The FCUA establishes the National Credit Union Administration as an independent agency in the executive branch of the Government. 12 U.S.C. § 1752a(a).
[4] Defendants concede that Congress originally created federal credit unions to meet a national problem, but argue that conditions have changed and that federal credit unions no longer effectuate a specific governmental program. In First Agricultural National Bank v. State Tax Commission, supra, the Supreme Court rejected a virtually identical argument addressed to the status of national banks. As that Court noted, the courts cannot change "what legislative history and prior decisions have established is the precise meaning of an Act of Congress." 392 U.S. at 345, 88 S.Ct. at 2176.
[5] Any institution examined by the Bureau is assessed separately for all actual expenses incurred in the examination, see footnote 1, supra; the sliding scale fees are intended to produce revenues for the general support of the Bureau of Consumer Protection, see, e. g., 2 Legis. Record, supra at 1979.
[6] Defendants concede, as they must, that the State of Maine could not constitutionally prevent federal instrumentalities such as federal credit unions from doing business in Maine. See, e. g., McCulloch v. Maryland, supra at 17 U.S. 436; Hancock v. Train, 426 U.S. 167, 178-81, 96 S.Ct. 2006, 2012-13, 48 L.Ed.2d 555 (1976); Arizona v. California, 283 U.S. 423, 451-52, 51 S.Ct. 522, 524-25, 75 L.Ed. 1154 (1931).