TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-817 |
| of | : | |
| | : | January 13, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE THOMAS H. GORDINIER, COUNTY COUNSEL, SOLANO COUNTY, has requested an opinion on the following questions:

1.      Are federal tax liens and releases subject to the new size and format standards of California's recording laws?

2.      May county recorders charge the federal government an additional fee for recording federal tax liens and releases that do not meet the new size and format standards of California's recording laws?

3.      Are California Uniform Commercial Code forms prescribed by the Secretary of State subject to the new format standards of California's recording laws?

CONCLUSIONS

1.      Federal tax liens and releases are not subject to the new size and format standards of California's recording laws.

2.      County recorders may charge the federal government an additional fee for recording federal tax liens and releases that do not meet the new size and format standards of California's recording laws.

3.     California Uniform Commercial Code forms prescribed by the Secretary of State are not subject to the new format standards of California's recording laws; however, a cover sheet must be recorded for any document not meeting the new standards.

ANALYSIS

Effective July 1, 1994, the laws governing the recording of documents by county recorders throughout California were substantially revised by the Legislature.  (Stats. 1992, ch 87.)  The changes relate to the size and format of the documents to be recorded, the quality of the paper, and other technical matters.  The purpose of the legislation is to facilitate the recordation of documents using the latest automation technology.

Of relevance to the questions presented for our resolution herein, Government Code section 27201, subdivision (a)[1] now provides:

"The recorder shall, upon payment of proper fees and taxes, accept for recordation any instrument, paper, or notice which is authorized or required by law to be recorded, if the instrument, paper, or notice contains sufficient information to be indexed as provided by statute, meets recording requirements of state statutes and local ordinances, and is photographically reproducible.  The county recorder shall not refuse to record any instrument, paper, or notice which is authorized or required by law to be recorded on the basis of its lack of legal sufficiency . . . ."

Subdivision (a) of section 27361, as amended, provides:

"(a)   The fee for recording and indexing every instrument, paper, or notice required or permitted by law to be recorded is four dollars ($4) for recording the first page and three dollars ($3) for each additional page, except the recorder may charge additional fees as follows:

"(1)   If the printing on printed forms is spaced more than nine lines per vertical inch or more than 22 characters and spaces per inch measured horizontally for not less than 3 inches in one sentence, the recorder shall charge one dollar ($1) extra for each page or sheet on which printing appears excepting, however, the extra charge shall not apply to printed words which are directive or explanatory in nature for completion of the form or on vital statistics forms. . . .

"(2)   If a page or sheet does not conform with the dimensions described in subdivision (a) of Section 27361.5, the recorder shall charge three dollars ($3) extra per page or sheet of the document.  The extra charge authorized under this paragraph shall be available solely to support, maintain, improve, and provide for the full operation for

_____

[1]All section references are to the Government Code unless otherwise indicated.

modernized creation, retention, and retrieval of information in each county's system of recorded documents. . . ."

Section 27361.5, as revised, provides:

"(a) As used in Section 27361, a page shall be one printed side of a single piece of paper being 8½ inches by 11 inches.

"(b) A sheet shall be one printed side of a single piece of paper which is not exactly 8½ inches by 11 inches but not greater than 8½ inches by 14 inches."

And section 27361.6, as revised, provides:

"Except as otherwise provided by law or regulation, all documents submitted for recording shall have at least a ½-inch margin on the two vertical sides except in the space reserved for recording information. At least the top 2½ inches of the first page or sheet shall be reserved for recording information. The left hand 3½ inches of the space shall be used by the public to show the name of the person requesting recording and the name and address to which the document is to be returned following recording. In the event the first page or sheet of a document does not comply with these requirements, a separate page shall be attached by the party requesting recording to the front of the document which meets these criteria and which reflects the title or titles of the documents as required by Section 27324. Any printed form accepted for recordation that does not comply with the foregoing shall not affect the notice otherwise imparted by recording.

"All instruments, papers, or notices presented for recordation shall be on a quality of paper and contain print of a size and color which will reproduce legibly by microphotographic or imaging processes as set forth in Sections 26205.5 and 27322.2.

"Any instrument, paper, or notice presented for recordation which in any way modifies, releases, or cancels the provisions of a previously recorded document shall state the recorder identification number or book and page of the document number being modified, released, or canceled."

1.      Federal Tax Liens and Releases

We are advised that federal tax liens and releases are preprinted on standard forms currently in use in all 50 states as required by federal law. (See 26 U.S.C. § 6323(f)(3); 26 C.F.R. § 301.6323(f)-1(c).) These forms measure approximately 7½ inches by 11 inches and thus do not meet the size requirements of section 27361.5. Additionally, the forms do not meet the margin and other format requirements presently prescribed by section 27361.6. Approximately 250,000 federal tax liens and releases are recorded in California each year.

The first question to be resolved is whether county recorders are required to file these federal forms that do not meet the new size and format state standards. We conclude that the federal forms must be recorded even though they do not comply with the standards specified in sections 27361.5 and 27361.6.

We first note that neither section 27361 nor section 27361.5 allows a county recorder to refuse absolutely the recordation of a document that does not meet the size requirements specified therein. If the size standard of section 27361.5 is not met, the only consequence is that "the recorder shall charge three dollars ($3) extra per page or sheet of the document." (§ 27361, subd. (a)(2).)

Second, the Legislature has enacted the Uniform Federal Lien Registration Act (Code Civ. Proc., §§ 2100-2107; hereafter "Act") to expressly and exclusively govern the recordation of federal tax liens and releases. Code of Civil Procedure section 2101 provides:

"(a) Notices of liens, certificates, and other notices affecting federal tax liens or other federal liens must be filed in accordance with this title.

"(b) Notices of liens upon real property for obligations payable to the United States and certificates and notices affecting the liens shall be filed for record in the office of the recorder of the county in which the real property subject to the liens is situated.

"(c) Notices of federal liens upon personal property, whether tangible or intangible, for obligations payable to the United States and certificates and notices affecting the liens shall be filed as follows:

"(1) If the person against whose interest the lien applies is a corporation or a partnership whose principal executive office is in this state, as these entities are defined in the internal revenue laws of the United States, in the office of the Secretary of State.

"(2) If the person against whose interest the lien applies is a trust that is not covered by paragraph (1), in the office of the Secretary of State.

"(3) If the person against whose interest the lien applies is the estate of a decedent, in the office of the Secretary of State.

"(4) In all other cases, in the office of the recorder of the county where the person against whose interest the lien applies resides at the time of filing of the notice of lien."

Code of Civil Procedure section 2103 states in part:

"(a) If a notice of federal lien, a refiling of a notice of federal lien, or a notice of revocation of any certificate described in subdivision (b) is presented to a filing officer who is:

"(1) The Secretary of State, he or she shall cause the notice to be marked, held, and indexed in accordance with the provisions of subdivision (4) of Section 9403 of the Commercial Code as if the notice were a financing statement within the meaning of that code; or

"(2) A county recorder, he or she shall accept for filing, file for record in the manner set forth in Section 27320 of the Government Code, and index the document by the name of the person against whose interest the lien applies in the general index.

"(b) If a certificate of release, nonattachment, discharge, or subordination of any lien is presented to the Secretary of State for filing he or she shall:

"(1) Cause a certificate of release or nonattachment to be marked, held, and indexed as if the certificate were a termination statement within the meaning of the Commercial Code, but the notice of lien to which the certificate relates may not be removed from the files; and

"(2) Cause a certificate of discharge or subordination to be marked, held, and indexed as if the certificate were a release of collateral within the meaning of the Commercial Code.

"(c) If a refiled notice of federal lien referred to in subdivision (a) or any of the certificates or notices referred to in subdivision (b) is presented for filing to a county recorder, he or she shall accept for filing, file for record in the manner set forth in Section 27320 of the Government Code, and index the document by the name of the person against whose interest the lien applies in the general index."

Section 27320 states in turn:

"When any instrument authorized by law to be recorded is deposited in the recorder's office for record, the recorder shall endorse upon it in the order in which it is deposited, the year, month, day, hour, and minute of its reception, and the amount of fees for recording. The recorder shall record it without delay, together with the acknowledgments, proofs, certificates, and prior recording data written upon or annexed to it, with the plats, surveys, schedules, and other papers thereto annexed, and shall note on the record its identification number, and the name of the person at whose request it is recorded. Efforts shall be made to assign identification numbers sequentially, but an assignment of a nonsequential number may be made if not in violation of express recording instructions regarding a group of concurrently recorded instruments and if, in the discretion of the county recorder, such assignment best serves the interest of expeditious recording."

The Act is to "be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this title among states enacting it." (Code Civ. Proc., § 2106.)

Pursuant to Code of Civil Procedure section 2101, subdivision (a), federal tax lines and releases "must be filed in accordance with" the Act's provisions. The Act does not authorize a county recorder to withhold recordation of federal tax liens and releases upon conditions specified in or imposed by other state laws. Rather, it directs county recorders to record such documents "without delay." (§ 27320.)

We believe that the Act's specific provisions concerning the mandatory duty to record federal tax liens and releases govern over provisions applying to the recordation of documents in general, such as sections 27361.5 and 27361.6. "`[S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.) "[W]hen a special and general statute are in conflict, the former controls." (*Agricultural Labor Relations Board* v. *Superior Court* (1976) 16 Cal.3d 392, 420.) "`[T]he special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.'" (*In re Williamson* (1954) 43 Cal.2d 651, 654.)

Finally, we note that in *United States* v. *Union Central Life Insurance Company* (1961) 368 U.S. 291, 294, the United States Supreme Court observed:

". . . While § 3672(a)(1) [currently 26 U.S.C. § 6323(f)(1)] unquestionably requires notice of a federal tax lien to be filed in a state office when the state authoritatively designates an office for that purpose, the section does not purport to permit the state to prescribe the form or the contents of that notice. Since such an authorization might well result in radically different forms of federal tax notices for the various states, it would run counter to the principle of uniformity which has long been the accepted practice in the field of federal taxation. . . ."

Based upon the foregoing, we conclude that federal tax liens and releases are not subject to the new size and format standards of California's recording laws. Under both state (Code Civ. Proc., § 2103) and federal law (26 U.S.C. § 6323(f)), a county recorder must record the liens and releases even though they do not meet the standards contained in sections 27361.5 and 27361.6. Specifically, the exclusiveness of the Act's provisions is controlling over the requirements of section 27361.6 concerning the necessity to file a cover sheet. Any other construction of the Act would undermine its purpose contrary to the Legislature's stated intent to foster uniformity among the states. Imposing the requirement of a cover sheet would, in effect, constitute a "change" in the federal forms not permitted by federal law.

2. Additional Fee

The second question is whether a county recorder may charge an additional fee for recording federal tax liens and releases that do not meet the size standards of section 27361.5. Section 27361, subdivision (a)(2) sets the amount of the additional fee at "three dollars ($3) extra per page or sheet of the document." We conclude that the additional fee may be imposed upon the federal government.

Looking first at the provisions of the Act, we find that Code of Civil Procedure section 2104 provides:

"The fee charged for recording and indexing each notice of lien or certificate or notice affecting the lien filed with the county recorder shall be the same as those established by Article 5 (commencing with Section 27360) of Chapter 6 of Part 3 of Division 2 of Title 3 of the Government Code for the recording and indexing of documents.

"The fee for filing and indexing each notice of lien or certificate or notice affecting the lien with the office of the Secretary of State is five dollars ($5).

"The officer shall bill the district directors of internal revenue or other appropriate federal officials on a monthly basis for fees for documents recorded or filed by the county recorder or the Secretary of State."

Since the additional fee of section 27361 is contained in "Article 5 (commencing with Section 27360) of Chapter 6 of Part 3 of Division 2 of Title 3 of the Government Code," the $3 fee for the recording of undersized documents is authorized under state law.

As for federal law, the federal government is subject to state and local fees to cover its fair share of the cost of the services provided to it. (See *United States* v. *City of Huntington, West Virginia* (S.D.W.Va. 1992) 793 F.Supp. 1370; *United States* v. *State of Maine* (D.Me. 1981) 524 F.Supp. 1056.) While a "fee" may be charged, the law since *McCulloch* v. *Maryland*, 17 U.S. (4 Wheat) 316 (1819) has consistently been that a state may not "tax" the federal government. (See *California Equalization Board* v. *Sierra Summit* (1989) 490 U.S. 844, 848-849; *South Carolina* v. *Baker* (1988) 485 U.S. 505, 515-527.) In *United States* v. *State of Maine, supra*, 524 F.Supp. 1056, the court discussed the distinction between the imposition of a valid fee and an invalid tax:

". . . A considerably more difficult question is whether the exaction at issue is a tax or a fee. In making that determination, the Court must look behind the label attached by the State to the true nature of the charge. *City of Detroit* v. *Murray Corp.*, 355 U.S. 489, 492, 78 S.Ct. 458, 460, 2 L.Ed.2d 441 (1958). Courts have announced a number of somewhat different formulations for distinguishing a fee from a tax; in the present case this Court is persuaded that the appropriate standard is the three-prong test announced by the Supreme Court in the analogous context of state immunity from federal taxation: (1) Is the charge imposed in a nondiscriminatory manner? (2) Is the charge `a fair approximation of the cost of the benefits' received? and (3) Is the charge structured to produce revenues that will not exceed the total cost to the government of the benefits to be supplied? *Massachusetts* v. *United States*, 435 U.S. 444, 464-67, 98 S.Ct. 1153, 1165-67, 55 L.Ed.2d 403 (1978)." (*Id.*, at p. 1059.)

It has been repeatedly held that a *precise* correlation need not be established between the fees charged the federal government and the services rendered, so long as the amounts are not

unreasonable. In *Massachusetts* v. *United States* (1978) 435 U.S. 444, for example, the court discussed the general principles in two analogous situations, one involving a federal charge upon a state and the other involving a state charge upon an activity protected by the commerce clause (U.S. Const., art. I, § 8, cl. 3):

> "Having established that taxes that operate as user fees may constitutionally be applied to the States, we turn to consider the Commonwealth's argument that § 4491 should not be treated as a user fee because the amount of the tax is a flat annual fee and hence is not directly related to the degree of use of the airways. The argument has been confronted and rejected in analogous contexts. *Capitol Greyhound Lines* v. *Brice*, 339 U.S. 542 (1950), is illustrative. There the Court rejected an attack under the Commerce Clause on an annual Maryland highway tax of `2% upon the fair market value of motor vehicles used in interstate commerce.' The carrier argued that the correlation between the tax and use was not sufficiently precise to sustain the tax as a valid user charge. Noting that the tax `should be judged by its result, not its formula, and must stand unless proven to be unreasonable in amount for the privilege granted,' *id.*, at 545, the Court rejected the carrier's argument:

> "`Complete fairness would require that a state tax formula vary with every factor affecting appropriate compensation for road use. These factors, like those relevant in considering the constitutionality of other state taxes, are so countless that we must be content with "rough approximation rather than precision." . . . Each additional factor adds to administrative burdens of enforcement, which fall alike on taxpayers and government. We have recognized that such burdens may be sufficient to justify states in ignoring even such a key factor as mileage, although the result may be a tax which on its face appears to bear with unequal weight upon different carriers. . . . Upon this type of reasoning rests our general rule that taxes like that of Maryland here are valid unless the amount is shown to be in excess of fair compensation for the privilege of using state roads.' *Id.*, at 546-547. (Citations and footnotes omitted.)" (*Id.*, at pp. 463-464.)

As specified in section 27361, the fee for recording an undersized document is imposed in a nondiscriminatory manner "to support, maintain, improve, and provide for the full operation for modernized creation, retention, and retrieval of information in each county's system of recorded documents." Although the fee is set at a flat $3 per page or sheet, we have not been apprised that it is other than "a fair approximation of the cost of the benefits" received. Indeed, we are informed that special handling will be required for the federal liens and releases due to their lack of uniformity with the standards specified for the new automation recording technology. Accordingly, we conclude that a fee may be charged for recording federal liens and releases under the terms of section 27361, subdivision (a)(2), unless it is shown that the fee exceeds a fair approximation of the costs of the special handling required.

     3.     California Uniform Commercial Code Forms

The final inquiry is whether California Uniform Commercial Code forms prescribed by the Secretary of State are subject to the new format standards of California's recording laws. We conclude that the forms need not comply with the format requirements of section 27361.6; however, a cover sheet must be recorded for any document not meeting the new standards.

Our analysis of the first question provides the basis for our answer to the third question. The California Uniform Commercial Code forms at issue are the size that is specified in section 27361.5, but their formats are different from the criteria prescribed in section 27361.6. As we noted previously, however, the format requirements of the latter statute are to be applied "[e]xcept as otherwise provided by law or regulation."

Here, the forms in question are prescribed by the Secretary of State pursuant to statute. Indeed, the Legislature has expressly provided in the California Uniform Commercial Code the amount of the filing fee for each form containing the format prescribed by the Secretary of State. (See, e.g., Cal. U. Com. Code, § 9403, subd. (5) ["The uniform fee for filing, indexing and furnishing filing data (subdivision (1) of Section 9407) for an original financing statement, an amendment or a continuation statement shall be five dollars ($5) if the statement is in the standard form prescribed by the Secretary of State . . . ."].)

While the forms must be filed, the issue remains whether a cover sheet must also be attached.[2] Unlike the situation of the federal tax liens and releases, we find no impediment under state or federal law precluding the requirement of a cover sheet in these circumstances.

The only way a document may be filed that does not meet the format requirements of section 27361.6 is if the document's format is "provided by law or regulation." However, in that situation, section 27361.6 then specifies that "a separate page shall be attached by the party requesting recording to the front of the document which meets these criteria . . . ."

The fact that the Legislature has established a fee schedule for the filing of California Uniform Commercial Code forms does not alter our conclusion. The fee schedule may be imposed while allowing the filing of a cover sheet required by section 27361.6. A form may have one filing fee, and its required cover sheet may be subject to a separate filing fee, since both fees serve different legislative purposes.

In answer to the third question, therefore, we conclude that California Uniform Commercial Code forms prescribed by the Secretary of State are not subject to the format standards of California's new recording laws; however, a cover sheet is required to be filed (and the prescribed recording fee paid) if a particular form does not satisfy the criteria specified in section 27361.6.

\* \* \* \* \*

---

[2]Of course, recordation of a cover sheet, if required, will be subject to the normal $3 per page filing fee (§ 27361, subd. (a)).